IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE ALFREDO LOPEZ,

     **Plaintiff,**

vs.                                 No. CIV  04-668 BB/LCS

CORRECTIONS CORPORATION OF
AMERICA, C/O RIPPETOE,

     **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on  Defendants' Motion for Summary Judgment filed on July 19, 2005 (Doc. 31), and Plaintiff's Motion for Summary Judgment, which I will treat as a response to Defendant's Motion, filed on August 12, 2005.  (Doc 32.)  On June 16, 2004, the assigned United States District Judge referred this matter to the undersigned United States Magistrate Judge to submit proposed findings of fact and recommendation for the disposition of this case pursuant to 28 U.S.C. § 636(b)(1).  The United States Magistrate Judge, having considered the *Martinez* report, motions and memoranda, record, relevant law, and being otherwise fully advised, recommends summary judgment in favor of Defendants be **GRANTED**.

### PROPOSED FINDINGS

1. Plaintiff, a *pro se* litigant proceeding in forma pauperis, filed a Civil Rights Complaint in this Court on June 14, 2004 alleging that Defendant Rippetoe made false and defamatory accusations and statements about Plaintiff, thereby endangering his life.  (Doc. 1 at 1.)  The Court construed Plaintiff's subsequent Response to the Court's Order to Show Cause

(Doc. 8) as an amended complaint seeking damages in the sum of $40,000 for violations of his

constitutional rights under the Eighth Amendment and 42 U.S.C. § 1983.[1]  (Doc. 15 at 3-4.)

2.      On September 30, 2004, the District Judge entered an Order *sua sponte*

dismissing all claims against Torrance County.  (Doc. 9.)  The remaining defendants answered

the Complaint on November 16, 2004, denying that Plaintiff is entitled to relief and advancing

affirmative defenses.  (Doc. 13.)

3.      On January 28, 2005, I directed Defendants to submit a *Martinez* report

addressing each claim contained in Plaintiff's Complaint.  (Doc. 16 at 2.)  The parties were

notified that the *Martinez* report may be used in deciding whether to grant summary judgment on

Plaintiff's claims, whether by Motion or *sua sponte*, and that the parties should submit whatever

materials they consider to be relevant to Plaintiff's claims.  *See Hall v. Bellmon*, 935 F.2d 1106

(10th Cir. 1991).

4.      Defendants submitted their *Martinez* report on April 4, 2005 (Doc. 21), and

Plaintiff submitted his own *Martinez* report on June 9, 2005.  (Doc 30.)  Defendants filed a

Motion for Summary Judgment on Plaintiff's claims on July 19, 2005.  (Doc. 31.)  Plaintiff filed

his own Motion for Summary Judgment on August 12, 2005.  (Doc. 32.[2])  In an abundance of

caution, Defendants treated Plaintiff's Motion as both a response to their own Motion – and thus

filed a Reply (Doc. 34), and as an original Motion for Summary Judgment – and thus filed a

---

[1] To the extent Plaintiff alleges a cause of action under 42 U.S.C. § 1983 for defamation, his claim fails and should be dismissed because an interest in one's reputation is not a right, privilege, or immunity protected by the Constitution or laws of the United States.  *Paul v. Davis*, 424 U.S. 693, 710-12 (1976).

[2] Document 32 has pages that are misnumbered or missing numbers.  Rather than rely on the page numbers as handwritten on Document 32, I will refer to the pages in their correct numerical sequence.  I will treat all documents filed by Plaintiff similarly.

Response.  (Doc. 33.)  Because "[t]he failure of a party to file and serve a response in opposition

to a motion . . . constitutes consent to grant the motion[,]" I will construe Plaintiff's Motion for

Summary Judgment as a response to Defendants' Motion for Summary Judgment.  D.N.M.LR-

Civ. 7.1(b) (2004).

5.      Defendants submitted evidence that on March 6, 2004, Plaintiff asked Corrections

Officer ("C.O.") Rippetoe why he was not talking Plaintiff.  (Doc. 21, Ex. F at 2; *see also* Doc. 1

at 2.)  C.O. Rippetoe responded by explaining that he would not discuss certain matters with

Plaintiff because the last time he had, he got into trouble.  (Doc. 21, Ex. F at 2.)  C.O. Rippetoe

also indicated that he believed an inmate had given a statement to his supervisors.  (*Id.*)  Plaintiff

contends Rippetoe's response was more of an "outburst" accusing Plaintiff of providing a written

statement to C.O. Rippetoe's supervisors and ultimately causing C.O. Rippetoe to not receive a

Sergeant stripe.  (Doc. 1 at 2.)

6.      C.O. Rippetoe asserts that the first time the word "snitch" was used was when

Plaintiff asked him whether he was calling Plaintiff a snitch.  (Doc. 21, Ex. F at 3.)  C.O.

Rippetoe's assertion is supported in C.O. Keith Weidner's affidavit.  (*Id.*, Ex. G at 2.)  Plaintiff

does not dispute this claim but contends C.O. Rippetoe's accusations were the equivalent of

calling Plaintiff a snitch, and C.O. Rippetoe was aware of this fact.  (Doc. 1 at 2 ("therefor [sic]

calling me a 'snitch'"); *see also* Doc. 30 at 1 ("in other words calling me a snitch"); Doc. 32 at 6

("C.O. Rippetoe knew exactly what he was doing when he made that statement.").)

7.      Plaintiff claims the accusations were spoken loudly enough for other inmates to

hear, but he does not offer any affidavits in support.  (Doc. 1 at 2; Doc. 30 at 1; Doc. 32 at 6.)

C.O. Rippetoe explains that the doors in the segregation unit where Plaintiff was housed are

solid.  (Doc. 21, Ex. F at 2.)  Communication through a closed door is only possible by speaking

through a food port, a small horizontal opening through which nothing larger than a food tray

can pass.  (*Id.*)  Neither C.O. Rippetoe nor C.O. Weidner know whether other inmates overheard

this conversation.  (*Id.* at 3, Ex. G at 3.)  Further, neither officer is aware of any inmate who

threatened or physically harmed Plaintiff as a consequence of this conversation, or who

considered Plaintiff to be a snitch.  (Doc. 21, Ex. F at 3-4, Ex. G at 3.)

        8.      Plaintiff believes the incident put his life in danger (Doc. 1 at 3; Doc. 30 at 2) but

never contends he was threatened or harmed by an inmate or prison official at the Torrance

County Detention Facility ("TCDF").  (*See* Doc. 1; Doc. 30 at 12; Doc. 32 at 4-5.)  Additionally,

Plaintiff moved from TCDF to an institution in Cumberland, Maryland on September 14, 2004,

and later moved to an institution in Jonesville, Virginia; he does not assert he has been threatened

or harmed at either facility.  (Doc. 14 at 2; Doc. 27.)  Nor does Plaintiff claim he knows of

inmates or prison officials at any of the three facilities who consider him to be a snitch.  (*See*

Doc. 32 at 4.)  Nevertheless, Plaintiff claims he is worried about the possibility someone from

TCDF will be moved to his current facility and cause trouble because of this incident.  (Doc. 8 at

1; Doc. 32 at 3.)  At the same time, Plaintiff states, "[whether] any officer or inmate believe [sic]

that I Plaintiff was a snitch or not that is not the case in this matter . . . ."  (*Id.*)

## STANDARD

    Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(c).  If the jury could return a verdict for the nonmovant, then there is

a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Defendant, as moving party, bears the initial burden of establishing the absence of a

genuine issue of fact, and can meet this burden by demonstrating a lack of evidence to support

the Plaintiff's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If Defendant meets this

burden, the burden will shift to Plaintiff to show there is indeed a genuine issue of material fact.

*Anderson*, 477 U.S. at 256.  Plaintiff "may not rest upon mere allegations or denials of his

pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

citing FED. R. CIV. P. 56(e).

The Court considers the record "in the light most favorable to the nonmoving party."

*Dreiling v. Peugot Motors of Am., Inc.*, 850 F. 2d 1373, 1377 (10th Cir. 1988) (citation

omitted).  Because Plaintiff is *pro se*, I will construe his pleadings liberally and hold him to a less

stringent standard than I would a represented party.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991).  I will not, however, "construct arguments or theories for the plaintiff . . . ." *Drake

v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  Finally, Plaintiff is not relieved

from following the rules of procedure, both local and federal, because of his *pro se* status.

*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

## ANALYSIS

Plaintiff has not established a cognizable Eighth Amendment claim for failure to protect,

because he has not shown Defendants were deliberately indifferent to any "substantial risk of

serious harm" to him.  *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994) (citations omitted).

*Farmer* held that the "deliberate indifference" standard includes both an objective and a

subjective component.  *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).  To

demonstrate deliberate indifference, Plaintiff "'must show that he is incarcerated under conditions

posing a substantial risk of serious harm,' the objective component, and that the prison official

was deliberately indifferent to his safety, the subjective component." *Id.* quoting *Farmer*, 511

U.S. at 834; *see also Northington v. Marin*, 102 F.3d 1564 (10th Cir. 1996).

Defendants have met their burden of establishing the absence of a genuine issue of fact by

demonstrating Plaintiff lacks evidence to support his case.  *Celotex*, 477 U.S. at 325.  Defendants

have provided this Court with affidavits which indicate that C.O. Rippetoe did not call Plaintiff a

snitch or intend to label him as such, that there is no evidence any inmate or prison official

believed Plaintiff was a snitch, and that Plaintiff was never harmed or threatened as a result of the

confrontation between Plaintiff and C.O. Rippetoe.  (Doc. 21, Exs. F, G.)  It is therefore

Plaintiff's burden to provide evidence to the contrary showing that there is a triable issue of fact

in order to survive summary judgment.  *Celotex*, 477 U.S. at 322-23.

Plaintiff has not met his burden of providing evidence sufficient to establish a genuine

issue of fact for trial.  He has not provided the Court with anything beyond the mere allegations

of his pleading and other filings.  "In certain circumstances a verified pleading may itself be

treated as an affidavit in support of a motion for summary judgment, but only if it satisfies the

standards for affidavits set out in Rule 56(e)." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.

1980) (citation omitted) (quoted in *Hall v. Belmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)).  To

satisfy the standards for affidavits, a pleading must "allege[] facts based on the plaintiff's

personal knowledge and [be] sworn [to] under penalty of perjury." *Hall*,  935 F.2d at 1111.

The only sworn document filed by Plaintiff is the Complaint. (Doc. 1.) Plaintiff never claims he should be exempted from the requirements set out in Rule 56(e), but even if I were to treat all of his filings as affidavits, he would not meet his evidentiary burden. Evidence of Plaintiff's personal knowledge that uncovers a genuine issue of a fact that "might affect the outcome of the suit" would "preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Evidence that C.O. Rippetoe "labeled him a snitch, that the label was communicated to other inmates, and that [C.O. Rippetoe] was aware of the obvious danger associated with a reputation as a snitch," would establish the type of factual dispute necessary to avoid summary judgment. *See Benefield*, 241 F.3d at 1271. The Plaintiff does not, however, demonstrate such personal knowledge in his Complaint or elsewhere.

In his Complaint, Plaintiff alleges that C.O. Rippetoe stated "in an outburst loud enough for other inmates to hear" that Plaintiff got him into trouble; this outburst, in Plaintiff's opinion, was the equivalent of labeling him a snitch. (Doc. 1 at 2.) Yet, Plaintiff never disputes Defendants' contention that Plaintiff was the first person to use the word "snitch." (*See* Doc. 21, Ex. F at 3.) He does not present any affidavits to show the statement was communicated to other inmates, or that anyone understood the statement as an effort to label Plaintiff as a snitch. There is no evidence in the Complaint C.O. Rippetoe was aware of any danger Plaintiff might suffer because of their confrontation.

Even if I treat all of the documents Plaintiff filed as affidavits, he still does not meet his burden of showing a genuine issue of fact. For example, he does not establish a factual dispute under *Farmer*'s objective standard by providing evidence that he faces a substantial risk of harm. 511 U.S. at 834. The only two people he mentions by name who heard the exchange – C.O.

7

Weidner, whose affidavit supports the defense, and inmate Danny Leal, a friend of Plaintiff –

apparently do not believe he is a snitch.  (*See* Doc. 21, Ex. G; Doc. 30 at 4, 8.)  Otherwise,

Plaintiff refuses to disclose the names of inmates who may have overheard the confrontation, and

he never claims anyone has threatened or harmed him as a consequence of the events.  (Doc. 32

at 4-5.)  In fact, Plaintiff insists it does not matter whether anyone believed he was a snitch.  (*Id.*

at 4.)  This is far from the truth.  If no one believes Plaintiff is a snitch, then C.O. Rippetoe's

statement did not subject Plaintiff to any risk of harm.  Plaintiff fails to establish a violation of his

rights.

## PROPOSED DISPOSITION

I recommend that Defendants' Summary Judgment Motion, filed July 19, 2005 (Doc.

31), be granted.  To the extent any state claims, such as the possible defamation claim, are not

disposed of, I recommend that this Court deny supplemental jurisdiction and dismiss them

without prejudice.  Objections to the foregoing may be made pursuant to 28 U.S.C. §

636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and

recommendations, that party may, pursuant to § 636(b)(1)(C), file written objections to such

proposed findings and recommendations with the Clerk of the United States District Court, 333

Lomas Boulevard N.W., Albuquerque, NM 87102.  A party must file any objections within the

ten day period if that party wants to have appellate review of the proposed findings and

recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**